## C. L. HARRIS v. THE STATE.

### No. 3446.          Decided February 14, 1906.

**1.—Robbery—Impuning Character of Witness—General Reputation of Witness —Practice—Cross-Examination—Stranger—Rebuttal.**

Upon a trial for robbery where the principal State's witness who was a stranger was put through a most searching and rigid cross-examination tending to bring him into disrepute before the jury, and directly or indirectly impugning his character to show the falsity of his testimony, there was no error in permitting the State to introduce witnesses to show the good reputation of said State's witness for truth and veracity, before defendant placed his evidence before the jury; besides witnesses for the defense were subsequently introduced whose testimony made serious attack upon the standing of said State's witness, and it was therefore immaterial that the sustaining evidence of the State was not brought out simply in rebuttal. Following Phillips v. State, 19 Texas Crim. App., 158.

**2.—Same—Impeachment of Witness—Charge Refused.**

Upon a trial for robbery where the impeaching evidence was not of such nature that it might mislead the jury into convicting for another offense, or bring about an increased punishment and could not injuriously affect defendant, and such evidence of general reputation could only affect the State's witness, there was no error in refusing a special charge to limit said testimony to the purpose of impeachment.

**3.—Same—Withdrawal of Testimony—Bill of Exceptions—Declaration of Third Party.**

Where on trial for robbery the bill of exceptions did not recite what the conversation was, had between the alleged injured party and a third party, and such conversation was drawn out by the defense, there was no error in the refusal of the court to withdraw said testimony by special charge.

**4.—Same—Harmless Error—Leading Question.**

On trial for robbery where the facts were all before the jury so clearly and strongly that the injured party was forced to turn over his money at the muzzles of pistols, his mere statement that he was afraid not to give the money to defendant, even if it was in response to a leading question, would not authorize a reversal.

**5.—Same—Contradiction of Witness—Predicate—Question—Answer.**

Upon a trial for robbery upon cross-examination of defendant, with reference to an extraneous offense, which laid the predicate for his contradiction by other witnesses, which were not introduced however, the defendant denying such offense, there was no error.

Appeal from the District Court of El Paso. Tried below before Hon. James M. Harper.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The facts of this case will be found in the companion case of Delaney v. State, 49 Texas Crim. Rep.,

The opinion states the case.

*M. W. Stanton & A. G. Wilcox,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.— This is a conviction for robbery, and a companion case to that Delaney v. State, decided at the recent Tyler Term, 1905. In the main the questions are the same in this as in Delaney's case.

One of the questions involved in this case not in the other, is the admission of testimony supporting the evidence of the alleged injured party, Montague. Montague was a stranger in El Paso, passing through that point from Mexico, to San Antonio, and was in the city of El Paso a few hours, caused by the delay of an outgoing train. While there he was induced to go to appellant's saloon, where the robbery should have occurred. Montague was put through a most searching and rigid cross-examination, tending to bring him into disrepute before the jury. Many of the questions on cross-examination went directly or indirectly to impugn his character, and show the falsity of his testimony before the jury. Before appellant placed his evidence before the jury, the State was permitted to introduce witnesses to show the good reputation of Montague for truth and veracity. Exception was reserved to this. The objection urged was that this testimony was irrelevant, that the State could not bolster up the testimony of the witness whose credibility had in no wise been attacked, and especially was said evidence inadmissible at the time it was introduced, that is, before the introduction of any testimony by appellant. And if such reputation for truth and veracity could be shown at all, it could only be in rebuttal. Some of these objections are only stated as ground of objection, and are not verified by the bill of exceptions as facts. For instance, it is stated as

a ground of objection, that the State could not bolster up the testimony of his witness whose credibility had in no wise been attacked. If this had been a fact, certified by the court or made to appear by bill of exceptions, it would have presented the question for discussion, but being simply stated as ground of objection, the court is not required to notice it. Be that as it may, the witness was subjected to a most rigid cross-examination, and by that character of examination which tended to bring him into disrepute before the jury, and indirectly seriously attacked his testimony: all of which was intended to convey to the minds of the jury that his whole testimony was false. This was the defensive theory of the trial. Montague's testimony made out a case of robbery. This was not only attacked by the rigid cross-examination as above stated, but by quite a number of witnesses introduced for that purpose: showing his whole story was false, if the defensive testimony could be credited. Where a witness has been attacked by laying a predicate for his subsequent impeachment, or where his character has been assailed in any manner, the State may introduce evidence to sustain that reputation, before the witnesses for the defense have been placed upon the stand directly to impeach. Wherever the attack is made upon the witness, the side offering the witness may sustain him. This question may be further sustained by stating that the witnesses for the defense were subsequently introduced whose testimony made serious attack upon the standing of Montague as a witness. Had it been originally error to introduce the sustaining evidence, this would have rendered the matter harmless. If in the first instance, the introduction of the testimony had been error, and the opposite side afterwards rendered that testimony admissible, then it is not of sufficient importance to authorize a reversal of the judgment, that the sustaining evidence was not brought out simply in rebuttal. It would have amounted to practically nothing to have excluded it at the time, and subsequently introduced when it became relevant or admissible testimony during the trial. A witness whose reputation has been directly assailed, or where his credit has been impeached by showing that he has made contradictory statements to his evidence given on the trial, may be sustained by proof of his general good character for truth and veracity, is well settled and would hardly need authorities. Greenleaf lays down this rule, and it has been repeatedly endorsed in this State by an unbroken line of authorities. We may mention Burrell v. State, 18 Texas, 713; Dixon v. State, 15 Texas Crim. App., 271; Coomes v. State, 17 Texas Crim. App., 258; Thomas v. State, 18 Texas Crim. App., 214; Johnson v. Brown, 51 Texas, 65; Phillips v. State, 19 Texas Crim. App., 158. However, in this case the witness' character or reputation had not been directly impeached; nor were contradictory statements shown up to the time the sustaining evidence was introduced. In Phillips' case, supra, it was said: "It was, however, shown that he was a stranger testifying to isolated facts, and the cross-examination to which he was subjected tended strongly to discredit his statement. Discussing the extent to which sustaining wit-

nesses are allowed, Mr. Wharton says, 'It is further held that such evidence may be admitted on particular discrediting facts being developed against the witness in his cross-examination, especially when he is in the situation of a stranger testifying to isolated facts.' (Wharton's Cr. Ev. 8th ed., sec. 491.)" Mr. Wharton cites authorities in support of this proposition. The Phillips case was approved in Crook v. State, 27 Texas Crim. App., 241. This rule was questioned in Payne v. State, 40 Texas Crim. Rep., 290, but the Phillips and Crooks cases were not overruled. In fact, that opinion held that the question was not presented, but the rule in the Phillips case was questioned. In Morrison v. State, 37 Texas Crim. Rep., 601, it was held that where the witnesses were not strangers, evidence of reputation was properly excluded. Morrison case, therefore, may be considered as not bearing upon the question. In Loomis v. Stuart, 24 S. W. Rep., 1078, evidence of reputation was admitted, where the defendant's integrity was indirectly attacked. We are of opinion that the rule laid down in the Phillips case is correct. So, viewed from either standpoint, the sustaining evidence was properly admitted.

It is also contended in the same bill of exceptions, that the court erred in not limiting this testimony to the purpose of impeachment. There was no error in refusing the charge asked by appellant. If the impeaching evidence offered was of such nature that it might mislead the jury into convicting for another offense, or to bring about an increased punishment or in any way could be used by the jury injuriously to appellant, it would become necessary for the court to limit the effect of the testimony to the purpose for which it was introduced. But the evidence of general reputation of a witness can be used for no other purpose. It carries no incriminating fact with it, and as stated it can only be used for the purpose of conveying to the mind of the jury the probable truthfulness of the story of the witness, as detailed before them. This witness was not the defendant's. If it is proper to give such a charge, where it only bears upon the general reputation of a witness, its refusal could not in any manner affect appellant injuriously. It was not calculated in any manner to affect the merits of the case, or appellant's rights before the jury.

An exception was reserved to the refusal of the court to give special requested instruction number 1, in regard to withdrawing from the jury testimony in reference to a conversation had between the alleged injured party, Montague, and one Nix, at the depot in El Paso. The bill does not recite what this conversation was, and the court qualifies this bill by stating that the evidence was drawn out by appellant's counsel. There was no error in this.

Montague was permitted to testify that he was afraid not to give the money to appellant and his associates at the time he delivered it to him. The objection urged to this was, that it was leading and suggestive. As this matter is presented no error is shown, and the facts were all before the jury so clearly and strongly that he was forced to turn over his money

at the muzzle of pistols, the mere statement of this question, even if it was leading and suggestive, was of such small moment as would not authorize us to reverse the judgment.

State's attorney, on cross-examination of defendant, asked the following questions and received the answers set out: "Q. Did you not hold up a soldier at your place just before this? A. No, sir; never held up a man in my place. Q. And when the soldier made a kick about it, you paid him back his money? A. Never has been a hold up in my place. I heard about a soldier losing a check up there at another place for $200, but he never lost it in my place. Q. When he went to start to the police station, it was given back to him; that so or not? A. I do not know anything about it." The matter ended, so far as the bill shows, with these questions and answers. The predicate was laid to contradict him upon these matters, but evidence was not introduced to sustain the predicate or contradict the witness. These answers were favorable to appellant, and while it might be questionable as to whether it could be shown in evidence as a matter of impeachment, being extraneous crime, still they were not introduced.

We do not believe there are any other questions of merit in the case. As before stated, however, many of the questions here were disposed of in the opinion affirming the companion case of Delaney v. State, at the Tyler Term.

Finding no error in the record authorizing a reversal, the judgment is affirmed.

*Affirmed.*