UNITED STATES, Appellee,

v.

**Ginger G. EVERAGE, Sergeant, U.S. Air Force, Appellant.**

No. 48462.
ACM 24022.

U.S. Court of Military Appeals.

Jan. 28, 1985.

For Appellant: *Captain Timothy J. Malloy* (argued); *Colonel Leo L. Sergi, Captain Bruce T. Brown*, and *Captain John V. Sullivan* (on brief).

For Appellee: *Captain Kevin L. Daugherty* (argued); *Colonel Kenneth R. Rengert* (on brief).

### Opinion of the Court

EVERETT, Chief Judge:

Tried by general court-martial, the accused was convicted, despite her pleas, of possessing 195 grams of marihuana and possessing drug abuse paraphernalia, in violation of Articles 134 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 892, respectively. The adjudged and approved sentence extends to a dishonorable discharge, confinement for 13 months, forfeiture of all pay and allowances, and reduction to airman basic. The findings and sentence were approved by the United States Air Force Court of Military Review in a *per curiam* opinion.

We granted the accused's petition for review of the following issue:

> WHETHER EVIDENCE OF THE APPELLANT'S CHARACTER FOR TRUTHFULNESS SHOULD HAVE BEEN ALLOWED IN RESPONSE TO THE ATTACK ON HER TRUTHFULNESS BY THE PROSECUTOR ON CROSS–EXAMINATION.

Our resolution of this issue is controlled by Military Rule of Evidence 608(a), which provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

It is the catch-all phrase "or otherwise" which we must apply to the facts here.

The evidence for the Government established that the accused was a passenger in an automobile driven by Sergeant Mollner which was stopped at the Netherlands-German border by German customs officials. During the inspection of the accused's luggage, a set of small scales wrapped in a distinct paper known to the customs officials and a roll of brown tape were found. There was a residue on the scales which the customs officer tested and found to be hashish. A second customs officer used a drug detection dog to conduct a search of the automobile, and the dog alerted in the area of the engine compartment. A further search revealed three packages inside the ventilation system of the car. The packages contained 140 plastic bags of hashish that weighed about 275 grams; four pipes; and three packages of screens used for smoking hashish. The packages were wrapped in paper known by the customs officers to be used by a shop in Amsterdam which sold "drug related paraphernalia" and covered with two colored tapes, one of which matched the tape in the accused's luggage.

The "rest of the story" was provided by the accused on the stand. She made numerous incriminating admissions and revealed details which were otherwise unknown to the prosecution. However, throughout the trial she maintained that the illicit drugs and paraphernalia were not hers and she had not participated in the attempted smuggling. Hence, the thrust of the defense case was that the accused was merely a knowing bystander in the offenses charged. Trial counsel responded with a long and searching cross-examina-

tion[1] designed to shake the credibility of the accused's version of the events. The substance of his questions was directed to the clear implication that the accused was lying.

With the case in this posture, the individual defense counsel attempted to call four witnesses who occupied supervisory positions over the accused. Trial counsel objected.

> TC: In any event, the defense intends, apparently, to call these witnesses to render an opinion as to the accused's character for truth and veracity. We would suggest that that is not admissible at this point, Your Honor. Clearly, evidence tending to bolster the character for truth and veracity of a witness is not admissible under the Military Rules of Evidence, 608(b), until that has been attacked. Now, we're—we recognize that there is a phrase, "or otherwise," in that rule, and that some courts have ruled, in certain situations, slashing cross-examination can rise, under some circumstances, to an attack on the character for truth and veracity of a witness. We would suggest, Your Honor, that that's not happened here. We have cross-examined the witness about the inherent probability or improbability of her story, trying to show why it was or was not

probable or improbable—or probable. Excuse me, Your Honor. We would suggest that any time—if this cross-examination rises to the level of an attack on the accused's character, then any time the accused gets on the stand and says, "I didn't do it," and she's cross-examined, then that's an attack on the—to try and show that she did—then that's an attack on her character. And that's certainly not the case, Your Honor. If it is, then 608(b) means nothing, for an accused witness.

After further argument from both counsel, the military judge refused to allow the witnesses to testify. He also stated:

> It is my finding that, based on my understanding of the meaning of those words that I just read [Mil.R.Evid. 608(a)(2)], that the threshold has not been reached in this case, and that the witness' character—character—and I emphasize that word—for truthfulness has not been attacked, certainly not by opinion or reputation, and I find that it also has not been attacked under the meaning of the word "otherwise," as contemplated by the Rule of Evidence, 608(a)(2).

The general rule governing the admission of character evidence is Mil.R.Evid. 404. Mil.R.Evid. 404(a)(1), which pertains

---

1. The cross-examination occupies 16 pages of the record of trial. Examples of the type and tone of questions asked by trial counsel disclose the thrust of his attack:

Q. You went up there with a person that you really didn't like, on your only weekend away from Rhein-Main in over a year, you spent the money that it took to get up there, you took the time it took to get up there, for less than twenty-four hours. That's what you're asking this court to believe?

\* \* \* \* \* \*

Q. A few more hours. So now we have a person, who is saving frantically to go home and see her husband, who she has been separated with—from for over a year, who has not been out—away from Rhein-Main for over a year, except for one TDY, who doesn't like the person that she's going with, and she just decides to ignore all that and go up to Amsterdam for a day. From what you just told us, it was going to be less than twenty-four hours, anyway. Isn't that right?

\* \* \* \* \* \*

Q. So it was important enough to you to go to Amsterdam for less than twenty-four hours, to spend some of that hard saved money, and go up there and spend the night in a room with somebody you really didn't care about, and to rent a car to do it. That's pretty expensive, too. Isn't it?

\* \* \* \* \* \*

Q. Well, according to the story that you told when your counsel was examining you, what you apparently did was take these items and just walk out without even checking to see if they were in there. Do you think that happened?

\* \* \* \* \* \*

Q. Well, you smoked hash with him. You were going to spend the night with him. And you had rented a car and gone up to Amsterdam with him. And you didn't want to have anything to do with him?

to an accused, provides for the admissibility of:

> [e]vidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut the same.

"Pertinent" apparently is intended to mean "relevant" to the misconduct charged. *See* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 182 (1981) [hereafter cited as Saltzburg, et al.]. We have held that evidence of the military character of an accused is admissible under this rule when the charge involved or the defense thereto has military connotations. *See United States v. Kahakauwila*, 19 M.J. 60 (C.M.A. 1984); *United States v. McNeill*, 17 M.J. 451 (C.M.A. 1984); *United States v. Piatt*, 17 M.J. 442 (C.M.A. 1984); *United States v. Clemons*, 16 M.J. 44 (C.M.A. 1983). However, what defense counsel proffered here was evidence of the accused's reputation for truth and veracity; while truthfulness would have been "a pertinent trait" of character if she had been prosecuted for a false official statement, it did not bear *directly* on her guilt or innocence of the alleged possession of marihuana and drug paraphernalia. *See United States v. Yarborough*, 18 M.J. 452, 457 (C.M.A. 1984). Therefore, this evidence of Everage's truthful character did not qualify for admission under Mil.R.Evid. 404. Instead, as the trial participants recognized, the appropriate rule was Mil.R.Evid. 608(a), which concerns evidence of a witness' character for truth and veracity.[2]

Obviously, the use of the phrase "or otherwise" in this rule reflects the drafters' intent that evidence of truthful character of a witness may be received in evidence not only when that character has been attacked by opinion or reputation evidence but also when it has been attacked by other means. For example, impeachment of a witness by evidence of a prior conviction of crime, which is authorized by Mil.R.Evid. 609(a) "[f]or the purpose of attacking the credibility of a witness," would allow the rehabilitation of that witness by evidence of his truthful character.

■ The fact that a witness takes the stand to testify does not automatically create the right to offer evidence to bolster his credibility. *United States v. Jackson*, 588 F.2d 1046 (5th Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). Further, the mere fact that conflicts between his testimony and other evidence are exposed during cross-examination does not by itself constitute an attack upon his character for truth and veracity sufficient to allow bolstering evidence. *Id.*; *Kauz v. United States*, 188 F.2d 9 (5th Cir. 1951). *See also United States v. Danehy*, 680 F.2d 1311 (11th Cir. 1982); *United States v. Angelini*, 678 F.2d 380, 382 n.1 (1st Cir. 1982). However, if specific instances of a witness' misconduct are "inquired into on cross-examination" in order to attack his credibility, *see* Mil.R.Evid. 608(b), rehabilitation of the witness by evidence of his truthfulness would seem to be authorized by Mil.R.Evid. 608(a). Otherwise, a distinction would be created between impeachment by evidence of a witness' conviction, admitted under Mil.R.Evid. 609 to attack his credibility, and evidence of his misconduct which the military judge allows to be elicited from the witness on cross-examination for the purpose of attacking his credibility. Such a distinction would be illogical because the misconduct admitted on cross-examination—although not the subject of a criminal conviction—might have at least as much tendency to impeach credibility as some prior convictions that would be admissible under Mil.R.Evid. 609.

■ According to several leading commentators, a "slashing cross-examination" may be sufficient to qualify as an attack on credibility under the "or otherwise" lan-

---

**2.** The interrelationship of Mil.R.Evid. 404(a) and 608(a) has been recognized in the Notes of the Advisory Committee on the Federal Rules of Evidence and in the Analysis of the Military Rules of Evidence. *See Federal Rules* 194 (West Pub. Co. 1982), and Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition), respectively.

guage of Mil.R.Evid. 608(a)(2).[3] *See McCormick's Handbook of the Law of Evidence* § 49 at 104 (E. Cleary 2d ed. 1972); Saltzburg, et al., *supra* at 288. Thus, when the tenor of cross-examination can be characterized as an attack on the witness' veracity, evidence of his truthful character may be offered to rehabilitate the witness. *United States v. Medical Therapy Sciences, Inc.*, 583 F.2d 36 (2d Cir. 1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979).

In applying these precepts, we are reminded of the words of Justice Frankfurter in *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 489, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951): "The difficulty is that we cannot escape, in relation to this problem, the use of undefined defining terms." Clearly, there is no finiteness to words such as "or otherwise," as used in the context of this rule, or "slashing," as used to modify "cross-examination."[4] Moreover, cross-examination can be extensive and nevertheless not constitute an attack on a witness' veracity. The cross-examiner may instead be seeking to establish that, although the witness is well-intentioned and seeks to tell the truth, his observation of events was faulty, his memory is poor, or his testimony on direct examination was ambiguous.

■■■ The question whether a witness' testimony may be bolstered by evidence of his truthful character can arise with re-·· spect to government or defense witnesses. The rules governing admissibility are the same in either instance, and they apply fully to an accused who takes the stand.[5] Of course, if evidence offered by the defense is excluded because of a trial judge's unduly restrictive interpretation of the Military Rules of Evidence, the accused is entitled to complain that he has been deprived of both his statutory rights, *see* Article 46, UCMJ, 10 U.S.C. § 846, and his constitutional rights, *see* U.S. Const. amend. VI; *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

■■ In the present case, Everage was confronted with government evidence that she had been a passenger in a car which contained a substantial quantity of drugs. She took the stand in her own defense, and the sole issue in the case became the credibility of her testimony when weighed against the circumstantial evidence offered by the Government. *Cf. United States v. Barnes*, 8 M.J. 115, 117 (C.M.A. 1979). She went far beyond what was necessary to deny her guilt when she admitted on direct examination that she had smoked marihuana with Sergeant Mollner and had been present when he purchased the drugs. Presumably this incriminating testimony was given in order to make her appear more believable to the court members when she denied possession of the drugs in the

---

**3.** An analogous situation arises under Mil.R. Evid. 801(d)(1)(B). We have held that cross-examination of a witness justifies the reception of a prior consistent statement under certain circumstances. *See United States v. Meyers*, 18 M.J. 347, 352 (C.M.A. 1984) (Everett, C.J., dissenting).

**4.** The specific phrase appears in *McCormick's Handbook of the Law of Evidence* § 49 at 104 (E. Cleary 2d ed. 1972):

Moreover, a slashing cross-examination may carry strong accusations of misconduct and bad character, which the witness's denial will not remove from the jury's mind. If the judge considers that fairness requires it, he may permit evidence of good character, a mild palliative for the rankle of insinuation by such cross-examination.[79]

[79] *Harris v. State* (1906) 49 Tex.Cr.R. 338, 94 S.W. 227 (most rigid cross-examination, in a manner tending to bring witness into disrepute before jury and indirectly attack his testimony). See also *Commonwealth v. Ingraham*, 73 Mass. (7 Gray) 46, 49 (1856) which sanctions proof of good character after a mere abortive attempt to prove the witness's bad character; C.J.S. Witnesses § 532. Mere inconsistencies in the testimony of the witness, exposed by cross-examination, were held insufficient to justify good character reputation evidence in *Royal v. Cameron*, 382 S.W.2d 335 (Tex.Civ.App. 1964).

**5.** However, the likelihood is especially great that the cross-examination of an accused who testifies will be intended to raise questions about his truthfulness—which, as here, often becomes the key issue at trial.

car. Naturally trial counsel chose to attack her credibility by an aggressive cross-examination. The "slashing" quality of the cross-examination is attested to by trial counsel's closing argument, wherein he repeatedly contended that the accused had lied on the stand,[6] and by the military judge's determination that a *Warren*[7] instruction would be necessary in the sentencing proceedings unless specifically waived by the defense. Moreover, the cross-examination seems intended to suggest that the accused had committed adultery with Mollner—an offense punishable by a dishonorable discharge and confinement for 1 year. *See* Table of Maximum Punishments, para. 127*c*, Manual for Courts-Martial, United States, 1969 (Revised edition); *cf.* Mil.R.Evid. 609(a).

In reviewing the able and experienced military judge's ruling that evidence of the accused's truthful character should be excluded, we are abundantly aware that reviewing courts should reverse rulings of trial judges on character evidence "rarely and only on clear showing of prejudicial abuse of discretion." *Michelson v. United States*, 335 U.S. 469, 480, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948). *See also United States v. Hewitt*, 634 F.2d 277 (5th Cir. 1981). However, it appears to us that, instead of exercising a permissible discretion, the judge proceeded on the basis of an erroneous legal premise—which was urged upon him by trial counsel and later was advanced in this Court by appellate government counsel. This premise was that, under Mil.R.Evid. 608(a), evidence of Everage's truthful character was admissible only if trial counsel had sought not only to demonstrate that the accused had lied on the stand but also to establish that she was an habitual liar.

■ This line of demarcation is not discernible in Mil.R.Evid. 608(a). Moreover, we perceive little logic in seeking to create such a finespun distinction. Instead, we conclude that, under Mil.R.Evid. 608(a), evidence of a witness' truthful character is like a savings account which may be drawn upon in time of need when his credibility is attacked—whether attacked as to specific testimony or more generally.[8]

In misconstruing Mil.R.Evid. 608(a), the military judge committed error. Since Everage's credibility was the key issue of the trial, this error was prejudicial. Our conclusion as to prejudice is fortified by the fact that Sergeant Mollner, who rented and drove the car in which the accused was a passenger, was acquitted of charges similar to those against her.

The decision of the United States Air Force Court of Military Review is reversed.

---

6. [I]f that tape is her's, if she had willingly taken that and put it in her bag, then she's lied to you on the stand, ...

    \*   \*   \*   \*   \*   \*

When you're being asked detailed questions about something that's a lie, don't you get nervous?

    \*   \*   \*   \*   \*   \*

... " ... But it takes a real smart person to get on the stand and lie because, to do that, you first have to make up the story, you then have to tell it, you have to remember it, and you have to be able to tell it the same way again." ...

    \*   \*   \*   \*   \*   \*

Because the accused, as well as any other witness—perhaps more than any other witness in this case—is capable and can lie on the stand. ... Has anybody in this room got a motivation to lie? Yes. One person. Who is that? Sergeant Everage ....

While it may well be proper for trial counsel so to argue, such assertions should permit the accused to counter with the only weapon she has: her reputation for truth and veracity.

7. *United States v. Warren*, 13 M.J. 278 (C.M.A. 1982).

8. We recognize the problems involved in uncritically permitting the introduction of such evidence which is collateral to the central issue of the culpability of the accused and which "at its best opens a tricky line of inquiry as to a shapeless and elusive subject matter." *Michelson v. United States*, 335 U.S. 469, 480, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948). The rule clearly limits such evidence to situations where the witness' credibility has been attacked. However, that attack need not take the form of negative character testimony. *See* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 288 (1981). Inclusion of the "or otherwise" language obviously was intended to broaden the expanse of the rule to encompass situations like that before us here.

The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge FLETCHER did not participate.

COX, Judge (concurring):

I concur. Chief Judge Everett's excellent opinion addresses the admissibility of the reputation of a witness for truth and veracity to bolster the witness when the "character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Mil.R.Evid. 608(a).

I also agree that the evidence would have been properly excluded as substantive evidence of a pertinent character trait under Mil.R.Evid. 404, since the alleged offenses are not *crimina falsi*. However, I reserve judgment on whether there may not exist another independent ground for admissibility of the evidence when the accused takes the witness stand. *Compare United States v. Darland*, 626 F.2d 1235 (5th Cir. 1980), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982), *with United States v. Jackson*, 588 F.2d 1046 (5th Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).