**UNITED STATES, Appellee,**

v.

**Staff Sergeant Timothy N. RYAN, 506–66–4722, United States Army, Appellant.**

**CM 446521.**

U.S. Army Court of Military Review.

20 Nov. 1985.

---

1. See *United States v. Treakle*, 18 M.J. 646, and its progeny.

For Appellant: Robert Francis Cryne, Esquire (argued); Major Lawrence F. Klar, JAGC, Captain James E. Girvin, JAGC (on brief).

For Appellee: Captain John F. Burnette, JAGC (argued); Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Byron J. Braun, JAGC (on brief).

Before RABY, CARMICHAEL, and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

CARMICHAEL, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer and enlisted members of attempted rape of a female under sixteen years of age and of four specifications of sodomy with a child under sixteen years of age, in violation of Articles 80 and 125, Uniform Code of Military Justice, (UCMJ), 10 U.S.C. §§ 880 and 925 (1982). The members sentenced appellant to a dishonorable discharge, confinement for fifty years, total forfeitures, and reduction to Private E-1. The convening authority approved the sentence.

The Government's case rested on the testimony of Duane, Jr. (DJ) and Michele N, the two children allegedly victimized by appellant, and their parents. Sergeant N, the children's father, testified that appellant was a friend of the family, that he visited their quarters regularly, and that he frequently stayed overnight with them. Mrs. N testified that appellant was treated as if he were part of the family, that he was given "home-cooked meals," and that on occasion he stayed with the children when she and her husband went out. She further testified that it was not until she, DJ, and Michele were watching a two-part television program focusing on the sexual abuse of children that she became aware

that her children had been victimized by appellant.

At the time of trial, DJ, the N's son, was nine years old. He testified that appellant would take him into one of the bedrooms in the N's quarters, would blindfold him, and then would put his penis in DJ's mouth or anus.[1] Michele, the N's daughter, who was twelve years old at the time of trial, essentially testified to similarly shocking acts committed against her person by appellant. Appellant more than once put his penis in her mouth after blindfolding her, and on one occasion put his penis in her anus and unsuccessfully attempted to penetrate her vagina. Michele testified that she did not tell her parents about what appellant had done because she was frightened. Also, appellant told her that he would be "put in jail for a long time" if she told her parents what had occurred.

The defense's case-in-chief consisted of three individuals testifying on behalf of appellant, as well as appellant's own testimony. Sergeant Cannon and Staff Sergeant Waite both testified that appellant was a moral person, that he exhibited no violent tendencies, and that he was peaceful and law-abiding. First Lieutenant Hoffman, appellant's platoon leader, testified that appellant was peaceful and law-abiding. Appellant categorically denied committing the alleged offenses.

Before this court, appellant contends, *inter alia*, that the military judge erred by excluding three witnesses from testifying as to his reputation for truth and veracity. Appellant maintains that such testimony should have been allowed because the government, through its cross-examination, had attacked appellant's character for truthfulness. Appellant further contends that the military judge's alleged erroneous exclusion of the aforementioned testimony

was compounded by: (a) the military judge's instruction on the credibility of witnesses, which was given once prior to presentation of the government's case-in-chief, and again prior to the court's closure for deliberation on findings;[2] and, (b) the trial counsel's continuous comments on the issue of credibility in his closing argument. Under these circumstances, appellant submits that not only was he deprived of his Sixth Amendment right to present favorable testimony, but was precluded from fully presenting his sole defense. In deciding this issue, the crucial question which we must answer is whether appellant's character for truthfulness was attacked, thereby entitling him as a matter of right to introduce evidence bolstering his credibility. Without such an attack within the meaning of Military Rule of Evidence [hereinafter referred to as Mil.R.Evid.] 608(a)(2), appellant concedes this assignment of error would lack merit.

The credibility of witnesses is always in issue in every case. "An accused is not required to testify in his defense and his failure to do so may not be the basis for any inference against him. But where he does elect to testify, as did this appellant, his credibility may be impeached like that of other witnesses." *United States v. Tomchek*, 4 M.J. 66, 71–71 (C.M.A.1977) (footnotes omitted). Trial counsel's entire cross-examination of appellant, constituting the fulcrum for the alleged attack on appellant's character for truthfulness, is reflected in the following extract from the record of trial. After appellant had concluded his direct testimony by expressly denying commission of the charged offenses, trial counsel asked a single question:

TC: What you're saying Sergeant Ryan, if I'm correct, is that DJ and Michele are lying?

---

1. Appellant blindfolded DJ with a dishtowel at least four separate times and then put his penis in the boy's mouth. On one occasion he put his penis in DJ's anus, causing the child to cry because of pain.

2. We note that the trial judge gave the standard instruction on credibility of witnesses, as found in Department of the Army Pamphlet 27–9, Military Judge's Benchbook (May 1982), prior to *voir dire*. At that time he made no mention of appellant or of testimony to be given by appellant. Prior to the members' deliberating on findings, the judge again gave the standard credibility instruction and stated that the instruction applied equally to testimony given by appellant.

DC: Objection, Your Honor. He doesn't know what they're doing. Calls for speculation.

MJ: Objection sustained.

TC: I have no questions of the witness, Your Honor.

■ Hence it is but one question, to which a defense objection was sustained by the military judge, that appellant maintains implemented Mil.R.Evid. 608(a)(2) and afforded him the legal right to have the proffered testimony bolstering his credibility admitted into evidence.[3]

Military Rule of Evidence 608(a)(2) provides:

> [E]vidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence *or otherwise* (emphasis added).

Appellant argues that, viewed under the totality of the circumstances in this case, trial counsel's cross-examination, *i.e.,* the tenor of the single unanswered question immediately following, as it did, appellant's denial of guilt, falls within the meaning of the "or otherwise" portion of Mil.R.Evid. 608(a)(2) and, consequently, admission of the proffered character evidence on truthfulness was mandated. We disagree. "Although [Mil.R.Evid. 608(a)(2)] should not be interpreted in a restrictive manner," *United States v. Woods,* 19 M.J. 349 (C.M.A.1985), it "clearly limits such evidence to situations where the witness' credibility has been attacked." *United States v. Everage,* 19 M.J. 189, 194 n. 8 (C.M.A.1985).

Here, having objectively viewed all the facts relating to the issue of whether or not there was an attack on appellant's credibility, we find that, within the meaning of Mil.R.Evid. 608(a)(2), there was not. Thus, the military judge did not err by ruling that evidence of appellant's truthful character would not be admitted. Implicit in our finding is our belief that appellant's character for truthfulness was and remained a collateral matter throughout the course of the trial.[4]

In finding that appellant's credibility was not attacked, we have looked to recent Court of Military Appeals' decisions to guide us both in the interpretation and application of Mil.R.Evid. 608(a)(2). The Court, in *United States v. Everage,* 19 M.J. 189 (CMA 1985), found that the accused's character for truthfulness had been attacked when, after her direct testimony, she was subjected to a "long and searching cross-examination designed to shake the credibility of [her] version of the events" (footnote omitted). *Id.* at 190–91. The thrust of the defense in *Everage* had been that the accused was a "knowing bystander" to drug-related offenses, but not an active participant. Crucial to this defense was the accused's comprehensive testimony which, while denying her participation in the charged offenses, revealed a number of facts unknown to the prosecution and contained incriminating admissions. Since in the Court's view the tenor of the cross-examination of the accused was to create a

---

**3.** When an objection is made and sustained before the witness answers the question, there is no evidence placed before the trier of fact. *See, e.g., United States v. Perez,* 491 F.2d 167, 172 (9th Cir.1974), *cert. denied sub nom. Lombera v. United States,* 419 U.S. 858 (1974).

**4.** Military Rule of Evidence 403 states that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In *United States v. Medical Therapy Sciences, Inc.,* 583 F.2d 36, 41, n. 6 (2d Cir.1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d

91 (1979), the United States Court of Appeals for the Second Circuit announced its belief that trial judges should be given the widest possible discretion in deciding whether supportive character evidence should be allowed:

> We think that trial judges should be permitted, under Rule 608, to exercise sound discretion to permit or deny a party the use of character evidence to support veracity. As is always the case, the balancing test under Rule 403 must be considered before any such evidence is permitted over objection. Furthermore, it is always open to the trial judge to deny a party the opportunity to present only cumulative evidence bearing solely on credibility. (Citation omitted.)

clear implication that she was lying, the phrase "or otherwise" in Mil.R.Evid. 608(a)(2) permitted the introduction of evidence to bolster her credibility. Accordingly, under these facts, the military judge's refusal to allow four defense witnesses to testify to the accused's character for truthfulness constituted reversible error.

We believe the factual differences between *Everage* and the case before us are apparent, and that *Everage* is clearly distinguishable. "The fact that a witness takes the stand to testify does not automatically create the right to offer evidence to bolster his credibility" (citation omitted), nor do conflicts between his testimony and other evidence exposed during cross-examination necessarily constitute a sufficient attack upon the witness' character for truthfulness "to allow bolstering evidence." *United States v. Everage*, 19 M.J. at 192. Of course, any time the prosecution introduces testimony that the accused committed the offense charged, and the accused subsequently takes the stand to deny involvement, credibility is a pivotal issue which the factfinders must resolve. Where, as here, the alleged victims testify that appellant committed the crimes of sodomy and attempted rape, and appellant then testifies that he did not, it is no revelation to the factfinders that one or more individuals are not testifying truthfully. Accordingly, the one unanswered question put to appellant by the trial counsel in this case did not suddenly reveal to the court members an issue that was not already before them, *i.e.*, the truthfulness of the government's witnesses vis-a-vis the truthfulness of appellant. To conclude otherwise would be to engage in an exercise in which subjective speculation was substituted for reasoned objectivity. Unlike the comprehensive testimony offered by the accused in *Everage* (followed by an extensive cross-examination), here appellant testified only briefly concerning the offenses of which he was convicted. After testifying in response to his counsel's questions that he once had to discipline the two children with "a quick swat on the backside," appellant concluded his testimony with negative

answers to three questions. They were: Did he ever show his penis to the children; did he ever attempt to molest them sexually; and did he ever do anything to the children that could be construed as "sexual molestation or child abuse." In short, appellant challenged the truthfulness of the testimony given by the two alleged victims. Furthermore, while in *Everage* the government relied upon circumstantial evidence to prove its case, testimonial conflict was an integral part of the case before us and had to be addressed and ultimately resolved by the court members. Such a conflict did not exist in *Everage*. Instead, it was in the tenor of the extensive, sharply-focused cross-examination that the Court of Military Appeals found an attack upon the accused's credibility in *Everage*. If we were to reach the same holding on the particular facts of this case, we in effect would be judicially revoking Mil.R.Evid. 608(a)(2) with respect to accused who take the stand and deny committing offenses contrary to the eyewitness accounts of government witnesses. Thus, merely by taking the stand and challenging the incriminating testimony against them, these accused would be entitled as a matter of law to bolster their credibility with other evidence. We do not believe that adherence to Court of Military Appeals' precedent mandates this curious result.

█ Like its holding in *United States v. Everage*, 19 M.J. 189, which we have discussed in some detail as a cornerstone decision in this area of the law, we are satisfied that the Court of Military Appeals' decisions in *United States v. Allard*, 19 M.J. 346 (C.M.A.1985) (reversible error to exclude testimony bolstering accused's credibility where government allowed to bolster credibility of its sole witness as a result of accused's testimony that witness had lied), and *United States v. Woods*, 19 M.J. 349 (C.M.A.1985) (reversible error to exclude testimony bolstering accused's credibility where government's cross-examination of accused and corroborating witness was clearly intended to induce the belief that accused was lying), are factually distin-

guishable from the case before us. However, assuming *arguendo,* that appellant's character for truth and veracity was attacked by trial counsel's improperly formulated question, our disposition of this assigned error remains unchanged. If the military judge erred in excluding defense testimony as to appellant's credibility, our examination of the record leads us to conclude that the error was harmless. Within the context of the defense presented, appellant introduced substantial evidence as to pertinent character traits. The court members heard three defense witnesses testify that appellant was peaceful, nonviolent, moral, and law-abiding. Accordingly, in light of what we view as comprehensive and significant character evidence introduced on appellant's behalf, we are unpersuaded that additional testimony focusing on appellant's character for truthfulness would have benefited either appellant or the members.[5] Evidence that an individual is nonviolent, of good moral character and law-abiding clearly implies that he is not the type of person who would sexually abuse children or lie under oath.[6] Thus, assuming *arguendo* that appellant should have been allowed to bolster his credibility to an even greater degree than was permitted at trial, we stand firm in our belief that the absence of such evidence, when balanced against the character testimony that was allowed, does not constitute reversible error. Considering the totality of the circumstances, we are satisfied that appellant was deprived of no statutory or constitutional right. *See United States v. Everage,* 19 M.J. at 193.

■ Furthermore, the practice of a military judge giving preliminary instructions to members is conducive to ensuring each accused receives a fair trial and is the preferred practice. *See United States v.*

*Waggoner,* 6 M.J. 77, 79 n. 2 (C.M.A.1978). The military judge gave general preliminary instructions to the court members, as well as specific instructions on reasonable doubt and the credibility of witnesses both prior to *voir dire* and prior to deliberation on findings. He informed counsel that he found repeating instructions assisted the members. There were no objections by the defense counsel to the judge's instructions, nor does our review of the record reveal any basis for a defense objection. We do not find that the military judge's instructions on credibility, either standing alone or when considered together with trial counsel's aborted cross-examination and argument on findings, constituted an attack on appellant's credibility. Moreover, a review of trial counsel's argument on findings indicates that he highlighted the differences in the testimony of appellant and the alleged victims, while reminding the members that they had to determine the credibility of the witnesses. *See United States v. Turner,* 17 M.J. 997 (A.C.M.R.1984). This, in our opinion, was not an attack on appellant's credibility, but fair comment on the state of the evidence before the members.

■ Appellant also contends that the evidence is insufficient to sustain his conviction. We find this contention to be without merit. "[C]onvictions for sexual offenses may be sustained on the basis of the victim's testimony alone ... if it is not inherently improbable or incredible." *United States v. Deshotel,* 15 M.J. 787, 790 (A.C.M.R.1983). *See also United States v. Urbina,* 14 M.J. 962 (A.C.M.R.1982). We do not find the testimony of the alleged victims, Michele and DJ, to be improbable or incredible, and, consequently, are satisfied that

---

5. It is possible that the same three witnesses who testified as to appellant's pertinent traits of character would have been recalled to testify as to his credibility had the military judge ruled differently. During the sentencing hearing, one of these witnesses, First Lieutenant Hoffman, was recalled and did in fact testify that appellant was honest and truthful. In view of the extensive testimony already given by these wit-

nesses as to appellant's good character, it is difficult to believe that their recall to add that appellant was truthful would have enhanced the defense's posture.

6. See that portion of n. 4, *supra,* discussing the presentation of cumulative evidence bearing on credibility.

the evidence is indeed sufficient to sustain appellant's conviction.

 Additionally, appellant complains that the military judge erred by *sua sponte* instructing the members on appellant's mendacity prior to sentencing. What has been termed as the "mendacious accused" instruction [7] was given over defense counsel's objection. Although a judge should act with caution in giving an instruction on mendacity over defense objection, we find that the military judge did not err by giving the instruction in this case. *See United States v. Warren*, 13 M.J. 278, 285 n. 9 (C.M.A.1982).

 Appellant argues that his sentence, if his crimes are viewed within the context of the favorable evidence presented on his behalf and not in a vacuum, is excessive and therefore should be reassessed. He notes impressive testimonial and documentary evidence of an outstanding military career which is essentially uncontradicted.[8] He also refers to a stipulation of expected testimony from a clinical psychologist stating that the two victimized children had not received permanent psychological damage as a result of appellant's offenses. No evidence was introduced by the government to counter this defense stipulation. While not minimizing either the circumstances surrounding the commission of or the serious nature of these despicable crimes, we agree, based on the record before us, that appellant's sentence is excessive and deem reassessment appropriate.

We have considered the issues personally raised by appellant and find them to be without merit.

The findings of guilty are affirmed. Only so much of the sentence as provides for a dishonorable discharge, confinement at hard labor for 35 years, forfeiture of all pay and allowances, and reduction to the grade of Private E-1, is affirmed.

Senior Judge RABY and Judge ROBBLEE concur.

---

7. The members were instructed as follows:
   You are advised that an accused's truthfulness or lack thereof while testifying on his own behalf may be deemed probative of his attitudes towards [sic] society and prospects of rehabilitation and hence, relevant to sentencing. However, you are advised that not every verdict of guilty returned by a court necessarily raises the specter of false testimony. Before you may consider an issue of false testimony adverse to this accused, you must be convinced in your own mind that the accused lied under oath.
   You must further be convinced that such lies were willful and material. That is, that they were intentional and involved a matter of importance to the determination of the accused's guilt. You are further advised that this factor may be considered by you only insofar that you conclude that it, along with all other circumstances in the case, bears upon the likelihood that the accused can be rehabilitated. You may not impose additional punishment for false testimony itself.

8. The government introduced one record of nonjudicial punishment under Article 15, UCMJ, 10 U.S.C.A. § 815.